UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| MARTHA JEAN BARTLEY, | ) |
| Plaintiff, | ) |
| v. | ) No. 1:22-CV-161-JEM |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 12]. Now before the Court are Plaintiff's Motion for Judgment on the Administrative Record [Doc. 13] and Defendant's Motion for Summary Judgment [Doc. 16]. Martha Jean Bartley ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of the Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

**I.  PROCEDURAL HISTORY**

On March 19, 2020, Plaintiff completed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, claiming a period of disability that began on January 15, 2020 [Tr. 205–06].[1] After her application was denied initially [*id.* at 48–59] and upon reconsideration [*id.* at 60–99], Plaintiff requested a hearing before an ALJ [*id.* at 126–27]. A telephonic hearing was held on November 9, 2021 [*Id.* at 29–47]. On January 27, 2022, the ALJ found that Plaintiff was not disabled [*Id.* at 11–28]. The

---

[1] Plaintiff filed her application on March 17, 2020 [Tr. 59].

Appeals Council denied Plaintiff's request for review on April 19, 2022 [*id.* at 1–7], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on June 20, 2022, seeking judicial review of the Commissioner's final decision under 42 U.S.C. § 405(g) [Doc. 1]. The parties have filed competing dispositive motions and supporting memoranda, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2024.
>
> 2. The claimant has not engaged in substantial gainful activity since January 15, 2020, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).
>
> 3. The claimant has the following severe impairments: generalized anxiety disorder and major depressive disorder (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: She would be limited to non-hazardous, simple, non-complex tasks; no work with the public, and no more than occasional interaction with coworkers/supervisors, and she would need a stable work environment (same/familiar people, same/familiar places, same/similar tasks).
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

> 7. The claimant was born on June 15, 1977 and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

[Tr. 16–23].

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citation omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the

3

case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court has explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). An individual will only be considered disabled:

4

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. § 416.920(a)(4), (e). An RFC is the most a claimant can do despite his limitations. *Id.* § 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must

5

prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

V. **ANALYSIS**

Plaintiff argues that "[t]he ALJ's mental RFC determination is unsupported by substantial evidence as [the ALJ] failed to comply with controlling law in evaluating the opinion of Paige Sullivan, Plaintiff's treating Nurse Practitioner" [Doc. 14 p. 1]. On February 18, 2021, Nurse Practitioner Paige Sullivan, PMNP-BL ("Nurse Practitioner Sullivan") completed a psychological evaluation request form, stating that she had been providing Plaintiff psychiatric medical management services for approximately six months and that Plaintiff's "[d]epression [had] improved" but her "anxiety/panic ha[d] not improved" [Tr. 412].[2] Nurse Practitioner Sullivan subsequently completed a medical source statement for Plaintiff that was submitted on September 27, 2021 [*Id.* at 612–15].[3] Under impairments, Nurse Practitioner Sullivan listed, "Increased depression, anxiety, decreased energy and motivation" [*Id.* at 612]. When asked whether Plaintiff

---

[2] At that time, Nurse Practitioner Sullivan opined in the form of check marks that Plaintiff could remember and carry out simple instructions and maintain a work routine without frequent breaks, maintain an ordinary work routine without inordinate supervision, maintain socially appropriate behavior, hygiene and grooming, respond appropriately to normal stress and routine changes, care for herself and maintain independence in daily living, maintain a work schedule without missing work frequently, and manage her own funds [Tr. 413].

[3] The medical source statement was submitted by "Kayla F. for Paige Sullivan" [Tr. 615]. At the time of the administrative hearing, the signature page of the medical source statement was missing [*Id.* at 33]. Counsel for Plaintiff relayed to the ALJ that Nurse Practitioner Sullivan and Kayla F. were no longer with the practice group [*Id.*]. Counsel stated to the ALJ that he "did verify that it was sent from their office by Kayla [F.] from another person at their office who had signed on the cover page for Paige Sullivan" and that "[to] [counsel's] knowledge, it appears to be a legit form filled out by Paige Sullivan" [*Id.*]. The record on appeal contains the medical source statement's signature page, which provides that the statement was submitted by "Kayla F. for Paige Sullivan" [*Id.* at 615].

6

could "reasonably [be] expected to be reliable in attending an 8-hour per day, 40-hour work week, week after week in view of the symptoms [Plaintiff] experiences," Nurse Practitioner Sullivan checked "No" but left the "Comments" section blank [*Id.*]. When asked whether she had any opinion as to the cause of Plaintiff's impairments, Nurse Practitioner Sullivan stated, "No documented cause" [*Id.*].

The medical source statement then asked Nurse Practitioner Sullivan to assess the severity of Plaintiff's limitations in twenty-two areas [*Id.* at 612–14]. Nurse Practitioner Sullivan opined that Plaintiff's ability to preform activities of daily living independently and appropriately was not restricted [*Id.* at 612–13]. She opined that Plaintiff's ability to concentrate, persist, and maintain pace; understand, remember, and carry out complex instructions; and maintain personal appearance were "fair" in that they were "usually satisfactory, but at times [] limited or precluded" [*Id.* at 612–14]. She opined that Plaintiff's ability to function in the remaining eighteen areas was "poor" in that it was "usually precluded" [*Id.*]. And when asked to "describe any medical/clinical findings that support [her] assessment," including "length of treatments, nature of relationship, objective measures, medical records review, medical expertise, experience," Nurse Practitioner Sullivan stated, "Depression, anxiety, presents with flat affect" [*Id.* at 614].

The ALJ detailed the findings from Nurse Practitioner Sullivan's psychological evaluation request form and medical source statement as part of his RFC analysis [*Id.* at 20–21]. The ALJ then made the following findings regarding the persuasiveness of her opinions:

> The opinions of nurse practitioner Paige Sullivan in Exhibit 3F [from February 18, 2021], essentially found no limitations; however, in her medical source statement in Exhibit 6F [from September 27, 2021], she opined the claimant was extremely limited; however, this opinion form stated, "no documented cause." As noted above, nurse practitioner Sullivan does not give any details of her treatment evaluation, but only lists diagnoses, medications,

7

> and potential side effects of medications with precautions. Nurse practitioner Sullivan's opinion at 6F is not supported by the evidence in the record, which shows that the claimant was doing well with her medications (Exhibits 1F, 2F). These opinions at 6F are not supported by any treatment by this provider, and they are not consistent with the treatment records provided by the claimant's new psychiatrist (Dr. McBride) contained in Exhibit 7F; to the contrary, by the claimant's second visit in November 2021, Dr. McBride's records indicate that the claimant was doing well overall. Therefore, the opinions of nurse practitioner Sullivan as contained in Exhibit 6F are not persuasive.

[*Id.* at 22].

Plaintiff argues that the ALJ "failed to properly evaluate the opinion of [Nurse Practitioner Sullivan] in accordance with the regulations and caselaw" [Doc. 14 p. 6]. Plaintiff asserts that "[t]he regulations dictate that an ALJ must at minimum explain how the supportability and consistency factors were considered" whereas "[t]he ALJ in this case made broad, conclusory statements in reaching her determination" [*Id.* at 8]. Plaintiff also argues that while "the ALJ concluded [Nurse Practitioner Sullivan's] opinion was not supported by the evidence in the record" because "it showed she was doing well on medications," the evidence in the record shows Plaintiff was not doing "well" with her anxiety, insomnia, and depression [*Id.* (first citing Tr. 21; then citing *id.* at 416, 421, 470)]. Plaintiff similarly asserts that while "[t]he ALJ again refers to the new physician's records stating that Plaintiff was 'doing well overall,'" "that is not what the treatment notes actually reflect" [*Id.* (first citing Tr. 22; then citing *id.* at 616–18)]. Plaintiff submits that "[n]ot only is the ALJ's analysis minimal but [it] is also inaccurate" and that the ALJ's articulations are "invalid and misleading" [*Id.*].

The Commissioner responds that "the ALJ's determination that [Nurse Practitioner] Sullivan's opinion was not persuasive was proper and substantial evidence supports his RFC finding" [Doc. 17 p. 5]. The Commissioner argues that while "Plaintiff claims that her treatment

8

records do not support the ALJ's statement that she was doing well overall or doing well with medications, and [] cites portions of medical records that she alleges support disabling limitations, a review of the record supports the ALJ's findings and discussion of the record" [*Id.* at 6]. The Commissioner then details several portions of the record that the Commissioner avers support the ALJ's findings that Plaintiff was doing well [*Id.* at 6–8].[4] The Commissioner submits that "[w]hile the record supports limitations consistent with the ALJ's RFC finding, it is consistent with [Nurse Practitioner] Sullivan's severely debilitating limitations" [*Id.* at 8 (citing Tr. 18, 612–14)].[5]

Upon review, the Court finds that the ALJ applied the correct legal standards in evaluating Nurse Practitioner Sullivan's medical source statement and that the ALJ's determination that her medical source statement was unpersuasive is supported by substantial evidence in the record.

### A.   The ALJ Applied the Correct Legal Standards

In determining a claimant's RFC, an ALJ must consider all relevant medical and non-medical evidence, including medical opinion evidence. 20 C.F.R. § 404.1520(e). An ALJ must

---

[4] Specifically, the Commissioner cites Plaintiff's January 2020 neurology treatment records that note Plaintiff was doing well with no complaints and was satisfied with her medication [Doc. 17 p. 6 (citing Tr. 304)], her May 18, 2020 statement that she was looking forward to fishing and had nothing new to add at that time [*id.* (citing Tr. 299)], her various treatment records with Nurse Practitioner Sullivan in which she was diagnosed with anxiety, insomnia, depression, and panic [*id.* at 7 (citing Tr. 391–92, 431–54); *see also id.* at 7–8 (citing Tr. 412–13, 416–17, 421–24, 612–15)], her April 8, 2021 neurology treatment records that showed Plaintiff's cognitive examination was normal [*id.* (citing Tr. 484)], and her November 3, 2021 treatment records with psychiatric nurse practitioner, George McBridge, PMHNP-BC, in which a mental status evaluation showed normal dress, grooming, and hygiene, good speech and eye contact, linear thought process, normal thought content, no hallucinations, and fair insight and judgment [*id.* at 8 (citing Tr. 616)].

[5] The Commissioner also argues that the prior administrative medical findings are inconsistent with [Nurse Practitioner] Sullivan's opinion and further support the ALJ's findings" [Doc. 17 p. 9], and that the ALJ's overall RFC determination is supported by substantial evidence because the ALJ properly considered Plaintiff's alleged symptoms as well as the entire record in making his RFC determination [*id.* at 9–11]. The Court finds it unnecessary to address these additional arguments in light of the below analysis and conclusions.

9

"evaluate the persuasiveness of medical opinions and prior administrative medical findings" using five factors, the most important of which are supportability and consistency. *Id.* § 404.1520c(a).[6] An ALJ is required to "articulate" and "explain how [they] considered the supportability and consistency factors" when determining "how persuasive [they] find a medical source's medical opinions or administrative medical findings to be." *Id.* § 404.1520c(b)(2). As to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* § 404.1520c(c)(1). As to the consistency factor, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." *Id.* § 404.1520c(c)(2).

While "the Sixth Circuit has not elucidated a specific standard to determine whether an ALJ sufficiently complied with the requirement[s]" of 20 C.F.R. § 404.1520c, "[d]istrict courts applying the [] regulations both within this circuit and throughout the country consistently apply the articulation requirement literally." *Gavre v. Comm'r of Soc. Sec.*, No. 3:20-CV-00551-DJH-CHL, 2022 WL 1134293, at *4 (W.D. Ky. Jan. 3, 2022) (collecting cases), *report and recommendation adopted*, No. 3:20-cv-551-DJH-CHL, 2022 WL 798035 (W.D. Ky. Mar. 15, 2022). Courts require the ALJ to "provide a coherent explanation of [their] reasoning," *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021), and "clearly explain [their] consideration of the opinion and identify the evidence

---

[6] The five factors include the (1) supportability and (2) consistency of the opinions or findings, the medical source's (3) relationship with the claimant and (4) specialization, as well as (5) "other factors" such as the "medical source's familiarity with the other evidence in a claim" and their "understanding of [the SSA's] disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c).

10

supporting [their] conclusions," *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). "The court will not uphold a decision when the [ALJ's] reasoning does 'not build an accurate and logical bridge between the evidence and the result.'" *Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021 WL 2535580, at *6 (N.D. Ohio June 3, 2021) (citations omitted) (quoting *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011)), *report and recommendation adopted*, 2021 WL 2530846 (N.D. Ohio Jun. 21, 2021).[7]

The Court finds that the ALJ sufficiently articulated the supportability factor. When analyzing Nurse Practitioner Sullivan's medical source statement, the ALJ stated both that the "opinion form stated, 'no documented cause'" and that Nurse Practitioner Sullivan "[did] not give any details of her treatment evaluation [in the statement], but only lists diagnoses, medications, and potential side effects of medications with precautions" [Tr. 22]. These statements go directly to how "relevant the objective medical evidence and supporting explanations presented by [Nurse Practitioner Sullivan] are to support . . . her medical opinion," 20 C.F.R. § 404.1520c(c)(1), and establish that the ALJ sufficiently articulated the supportability factor. *See Kirkland v. Kijakazi*, No. 3:22-CV-60-DCP, 2023 WL 3205330, at *11 (E.D. Tenn. May 2, 2023) ("In a case such as this, in which the medical provider sets forth little to no explanation for the ALJ to, in turn, critique, the Court finds it sufficient that the ALJ stated the physician failed to provide any accompanying explanation." (citation and footnote omitted)); *Rodriguez v. Comm'r of Soc. Sec.*, No. 21-cv-

---

[7] If the ALJ applied the correct legal standards in evaluating the relevant medical source opinions by sufficiently articulating the supportability and consistency factors, then this Court's review is otherwise limited to whether the ALJ's evaluations of such opinions is supported by substantial evidence. *See Blakley*, 581 F.3d at 405 ("Our review of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." (citation omitted)).

11

00752, 2022 WL 3973658, at *3 (N.D. Ohio Sept. 1, 2022) (finding the ALJ sufficiently articulated the supportability factor in discounting the claimant's treating physician's opinion by noting "that [the physician's] opinion failed to 'provide an explanation with documented support' for his conclusion").

The Court finds that the ALJ also sufficiently articulated the consistency factor. When evaluating the persuasiveness of Nurse Practitioner Sullivan's medical source statement, the ALJ stated both that "Nurse practitioner Sullivan's opinion at 6F is not supported by the evidence in the record, which shows that the claimant was doing well with her medications (Exhibits 1F, 2F)" and that

> [Nurse Practitioner Sullivan's] opinions at 6F are not supported by any treatment by this provider, and they are not consistent with the treatment records provided by the claimant's new psychiatrist (Dr. McBride) contained in Exhibit 7F; to the contrary, by the claimant's second visit in November 2021, Dr. McBride's records indicate that the claimant was doing well overall.

[Tr. 22].

Plaintiff contends that these statements by the ALJ were "broad," "conclusory," and "minimal [Doc. 14 pp. 8, 9], but in making these statements, the ALJ identified specific evidence from the record that was inconsistent with Nurse Practitioner Sullivan's findings, including evidence from Plaintiff's prior treatment records as well as evidence from George K. McBride, PMHNP-BC's ("Nurse Practitioner McBride")[8] psychiatric treatment records, which were authored after Nurse Practitioner Sullivan issued her medical source statement [Tr. 22]. The ALJ

---

[8] While the ALJ refers to Nurse Practitioner McBride as "Dr. McBride" [Tr. 22], Nurse Practitioner McBride's credentials indicate he is a nurse practitioner.

12

further detailed the evidence contained in these records earlier in his RFC analysis. As to Plaintiff's prior treatment records, the ALJ stated:

> Office treatment records noted on January 13, 2020, that the claimant was doing well with no complaints and was satisfied with her medication coverage. On February 20, 2020, she apparently had missed more than six days off work the month prior because of headaches; however, examinations were essentially normal, and neurological examination was normal. She was assessed with chronic tension type headaches, not intractable, chronic pain syndrome, anxiety disorder, unspecified, and long-term current use of opiate analgesic, and insomnia, unspecified. She was adequately treated for symptomatic control with the prescribed medications (Exhibit 1F, pg. 7). On May 18, 2020, she said she was looking forward to fishing, and there was nothing new to add at this time. She was satisfied with her medication coverage (Exhibit 1F, pg. 3). On June 18, 2020, her Pristiq was changed to Prozac, and she said she felt much better with this. Otherwise, she was her usual self, and satisfied with her medication coverage. She was still not working, laid off, but she did not appear interested in looking for a new job (Exhibit 1F, pg. 2).
>
> On August 8, 2020, records noted that the claimant said her anxiety medication needed to be changed. She said her medications were working some, but she could not tell the difference in her symptoms. Review of systems noted no irritability, paranoia, panic attacks, or thoughts of suicide. She had depression, anxiety, and sadness. Examination showed she had good insight, and good judgment, normal mood and affect, and she was active and alert. She was oriented to time, place, and person, and her recent and remote memory were normal (Exhibit 2F).

[*Id.* at 19–20]. As to Nurse Practitioner McBride's findings, the ALJ stated,

> [Plaintiff's] dress, grooming, and hygiene was normal; gait steady; speech and eye contact good; thought process and associations linear. Thought content was normal, and she had no auditory hallucinations, no visual hallucinations; and insight and judgment were fair. She was oriented to person, place, and time. Mood was anxious and affect constricted.

[*Id.* at 21].

13

By identifying specific evidence from the record that contradicted Nurse Practitioner Sullivan's medical source statement, including several treatment records from prior to Nurse Practitioner Sullivan's medical source statement as well as Nurse Practitioner McBride's examination findings from after Nurse Practitioner Sullivan's medical source statement, the Court finds that the ALJ sufficiently articulated the consistency factor. *See Timothy B. v. Comm'r of Soc. Sec.*, No. 2:22-cv-3834, 2023 WL 3764304, at *7–8 (S.D. Ohio June 1, 2023) (finding the ALJ articulated the supportability and consistency factors, in part, because the ALJ discussed the relevant evidence throughout her opinion that she found inconsistent with the medical opinion); *Hague v. Comm'r of Soc. Sec.*, No. 20-13084, 2022 WL 965027, at *4 (E.D. Mich. Mar. 30, 2022) (finding the ALJ sufficiently articulated the consistency factor by citing "specific documents in the record" that were "specific enough for the Magistrate Judge to assess the reasoning behind the ALJ's assertion"); *Zajac v. Comm'r of Soc. Sec.*, No. 1:20-cv-135, 2021 WL 1169466, at *4 (W.D. Mich. Mar. 29, 2021) (finding the ALJ sufficiently articulated the consistency factor by citing "consistently normal physical and mental examination findings[] and . . . support[ing] her reasons with citations to specific evidence in the record").

In sum, the ALJ applied the correct legal standards when evaluating Nurse Practitioner Sullivan's medical source statement as the ALJ sufficiently articulated both the supportability and consistency factors and "buil[t] an accurate and logical bridge between the evidence and the result." *Todd*, 2021 WL 2535580, at *6 (citations and internal quotation marks omitted).

### B. The ALJ's Conclusion is Supported by Substantial Evidence

Having found the ALJ applied the correct legal standards, the remaining question is whether substantial evidence supports the ALJ's finding that Nurse Practitioner Sullivan's medical source statement was unpersuasive. *See Blakley*, 581 F.3d at 405 ("Our review of the ALJ's

14

decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." (citation omitted)). Plaintiff argues that the ALJ's evaluation of the medical source statement is not supported by substantial evidence because the statements made by the ALJ when evaluating the medical source statement were "inaccurate" and "misleading" [Doc. 14 pp. 8–10]. *See Bailey v. Kijakazi*, No. 1:20-cv-105-DCP, 2021 WL 3276147, at *10 (E.D. Tenn. July 30, 2021) (applying the substantial-standard when determining whether the ALJ "mischaracterize[d] the medical record with respect to Plaintiff's mental impairments" in evaluating the persuasiveness of the relevant medical opinions).

Plaintiff first argues that the ALJ's statement, "Nurse practitioner Sullivan's opinion at 6F is not supported by the evidence in the record, which shows that the claimant was doing well with her medications (Exhibits 1F, 2F)" [Tr. 22], is inaccurate because "[while] the record shows that Plaintiff's medications were giving her support, they did not show she was doing 'well'" [Doc. 14 p. 8]. The Court does not identify this as an inaccuracy in the ALJ's interpretation of the evidence. The prior treatment records that the ALJ cited when making this statement note that Plaintiff was "[d]oing quite well" and had "adjusted to her medication regimen" at several points in time during the relevant period [Tr. 297 (noting on July 16, 2020, that Plaintiff was "[d]oing quite well" had "adjusted to her medication regimen" and was "[s]atisfied with her medication coverage"); *id.* at 300 (noting on April 20, 2020, that Plaintiff was "[d]oing quite well" had "adjusted to her medication regimen" and was "[s]atisfied with her medication coverage"); *id.* at 304 (noting on January 13, 2020, that Plaintiff was "[d]oing well, has no complaints, and is satisfied with her medication coverage")]. The ALJ, in turn, cited these findings from the prior treatment records in his RFC analysis, including by stating that "[o]ffice treatment records noted on January 13, 2020, that [Plaintiff] was doing well with no complaints and was satisfied with her medication coverage"

15

[*Id.* at 19]. While Plaintiff cites evidence from the record that she alleges shows she was not doing well despite her medication regiment [Doc. 14 pp. 8–9],[9] the question before this Court is whether substantial evidence supports the ALJ's findings—not whether evidence in the record would also support a contrary conclusion. *Blakley*, 581 F.3d at 406.

Plaintiff also argues that the ALJ's statement, "by the claimant's second visit in November 2021, Dr. McBride's records indicate that the claimant was doing well overall" [Tr. 22], is misleading and inaccurate [Doc. 14 p. 9]. Plaintiff notes that Nurse Practitioner McBride's records reflect that on October 6, 2021, Plaintiff's "sleep comes and goes[,] [a]nxiety is increasing, depression daily, endorses anhedonia, occasional feelings of h/h/w, continual worry about 'what is going to happen next'" [*Id.* (quoting Tr. 617)]. Plaintiff also notes that on November 3, 2021, Nurse Practitioner McBride's treatment notes state that "patient states her anxiety is high today," her "sleep is not real good, mood is all anxious, energy is very low, concentration is poor, appetite is fair," and she endorsed audio hallucinations, while her mental status examination revealed that her insight and judgment were only fair, her mood was anxious, and her affect constricted [*Id.* (quoting Tr. 616)]. Plaintiff asserts that "[n]owhere in either of the Cleveland psychiatric records does it say 'she is doing well overall'" [*Id.* (quoting Tr. 22)].

Nurse Practitioner McBride's treatment records do not expressly state that Plaintiff was doing "well" [Tr. 616–18]. The Court nevertheless finds that the ALJ's statement that Plaintiff

---

[9] Plaintiff cites, for example, that "on July 20, 2021 and September 22, 2021, she was seen for anxiety disorder, insomnia, severe recurrent major depression without psychotic features and panic attacks but at no point in the records does it state that she is doing well" but "only documents that her treatment is ongoing and her medications were continued" [Doc. 14 p. 8 (citing Tr. 416, 421)]. Plaintiff also notes that while on October 7, 2021, she was described at her neurology appointed as "doing quite well," she was not assessed for any mental health conditions at that time [*Id.* at 8–9 (citing Tr. 470)].

16

"was doing well overall" by her November 3, 2021 visit is supported by substantial evidence in Nurse Practitioner McBride's treatment notes. As the ALJ noted in his decision, Nurse Practitioner McBride's notes reflect that "[Plaintiff's] dress, grooming, and hygiene was normal" at her November 2021 visit, her "speech and eye contact [were] good," her "thought process and associations [were] linear," and her "[t]hought content was normal, and she had no auditory hallucinations, no visual hallucinations; and insight and judgment were fair" [*Id.* at 21 (citing *id.* at 616–18)]. Based upon this evidence, the Court finds the ALJ's conclusion that Plaintiff was doing well overall fell within his "zone of choice." *Blakley*, 581 F.3d at 406.[10] While Plaintiff cites evidence from Nurse Practitioner McBride's records that could support a contrary conclusion, again, the only question before this Court is whether substantial evidence supports the ALJ's decision. *See id.* And it does.

That Plaintiff's prior treatment records and records from Nurse Practitioner McBride—which the ALJ appropriately found indicated Plaintiff was doing well overall—were inconsistent with Nurse Practitioner Sullivan's opined limitations in turn provided substantial evidence for the ALJ to find Nurse Practitioner Sullivan's medical source statement unpersuasive. *See, e.g.*, *Hague*, 2022 WL 965027, at *5–6 (finding the ALJ's conclusion that a medical opinion was unpersuasive was supported by substantial evidence because the ALJ "specifically cited Plaintiff's treatment records from 2017-2019" that were inconsistent with the opinion's limitations); *Rodriquez v. Saul*, No. 3:20-cv-252-TRM-CHS, 2022 WL 4939617, at *6 (E.D. Tenn. Mar. 18, 2022) (finding "the ALJ's determination that Dr. Summers' report was unpersuasive is supported by substantial

---

[10] Nurse Practitioner McBride's November 3, 2021 treatment records also indicate that he "[d]iscussed [t]apering down Seroquel" with Plaintiff [Tr. 617]. Such evidence further supports the ALJ's finding that Plaintiff was doing well overall by her November 3, 2021 appointment.

17

evidence" because "[t]he ALJ [] found inconsistencies when comparing Dr. Summers' findings with . . . other medical reports in the record" which "undermine the consistency . . . of Dr. Summers' opinion"). The ALJ's finding that Nurse Practitioner Sullivan failed to provide supporting explanations for her opined limitations was also substantial evidence for the ALJ's decision to discount her opinion. *See Fauvie v. Comm'r of Soc. Sec.*, No. 4:20-CV-2750, 2022 WL 1459063, at *14–15 (N.D. Ohio Mar. 15, 2022) (finding the ALJ's decision to find a medical opinion unpersuasive was supported by substantial evidence where the medical source's assessment was "essentially a check list of limitations" and "her treatment notes provide only the barest of explanations"), *report and recommendation adopted*, 2022 WL 2662866 (N.D. Ohio July 11, 2022).

Accordingly, the Court finds that substantial evidence supports the ALJ's conclusion that Nurse Practitioner Sullivan's medical source statement was unpersuasive.[11]

## VI. CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's Motion for Judgment on the Administrative Record [**Doc. 13**], and **GRANT** the Commissioner's Motion for Summary Judgment [**Doc. 16**]. The Court **AFFIRMS** the decision of the Commissioner and **DIRECTS** the Clerk of Court to close this case.

ORDER ACCORDINGLY.

_____
Jill E. McCook
United States Magistrate Judge

---

[11] Because the Court has found the ALJ's evaluation of the medical source statement was proper, the Court finds it unnecessary to address Plaintiff's argument that she was harmed by the ALJ's RFC determination [Doc. 14 p. 10].

18